**UNITED STATES, Appellee,**

v.

**Leslie J. PAYNE, Specialist Five, U. S. Army, Appellant.**

No. 31,832.

CM 433010.

U. S. Court of Military Appeals.

Sept. 12, 1977.

Captain *Peter V. Train* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock,* and Captain *John R. Osgood.*

Captain *Richard A. Cefolá* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner, Captain Regis J. McCoy* and Captain *William C. Kirk.*

Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted of failure to safeguard classified material, wrongful appropriation of government documents, and furnishing classified materials to an unauthorized person in violation of Articles 92, 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921, and 934, respectively. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for 4 years. The convening authority and the U. S. Army Court of Military Review approved the findings and sentence without modification. We granted review to determine whether the appellant was denied his pretrial rights under Article 32, UCMJ, 10 U.S.C. § 832. Counsel for the appellant argue that the actions of the investigating officer in consulting with the trial counsel were so substantial as to constitute an abandonment of the required impartiality, and resulted in a derogation of the judicial functions inherent in that office. Upon examination of the record, we conclude that the appropriate standards were not observed.

The investigating officer, Major Payne, was appointed on October 30, 1974. After his appointment he testified that he reported to the trial counsel, Captain Gravelle, for a "briefing on the facts and evidence that was available at that time." The matter of his role and responsibilities as an investigating officer were discussed, and Major Payne was subsequently informed that a Major Runke from the office of the staff judge advocate would be available to advise him on the various questions which might develop during the course of the investigation.[1]

---

1. Major Payne was not a legally trained officer; Major Runke, who was appointed to serve as his legal advisor, was apparently chosen because he did not serve in a prosecutorial function in the office of the staff judge advocate.

Despite the availability of Major Runke, Major Payne instead chose to confer with Captain Gravelle on seven additional occasions concerning various facets of the investigation.[2] Although Major Payne characterized the matters discussed as "procedural" rather than "legal" in nature, our examination of the matters discussed[3] and his testimony explaining these discussions lead us to a different conclusion.[4] However laudable his desires to confer with someone more "familiar" with the case may have been, we find that these ex parte discussions with the prosecuting attorney were violative of his role as a judicial officer.

We believe that much of the difficulty encountered in resolving this issue has resulted from a misperception of the proper focus of analysis. Since correct examination of this question must involve a recognition that the Article 32 investigating officer performs a judicial function,[5] the pertinent determination for a court must be whether the judicial nature of that office has been maintained. We are not unmindful of the problems inherent with the use of "lay judges,"[6] yet we cannot agree with any suggestion that one serving in this capacity need not conduct himself in accordance with proper judicial standards.[7] The Su-

2. Ironically, Major Payne testified that it was he who initially questioned whether Captain Gravelle could serve as his advisor, and, further, sought guidance from Captain Gravelle as to the parameters of the advice. He explained that he chose to continue conferring with Captain Gravelle after being apprised of the potential problems because he felt that Captain Gravelle was more "familiar" with the case, and would not have to read the case file or perform other introductory work in order to be able to give advice.

3. The full text of the matters which Major Payne felt were discussed was set forth in his notes and admitted as prosecution exhibit 1 at trial. Major Payne testified that the list (appendix I) was not all inclusive.

4. Many of the items on the list (and Major Payne's further explanation of the notations at trial) did concern procedural aspects of an Article 32 investigation; however, several related to questions of the applicable burden of proof, evidentiary standards, and, most critically, the legality of the search which produced the incriminating evidence against the appellant. Although Major Payne may have felt these matters were also "procedural" in nature, we conclude otherwise; nor can we accept the proposition that any judge, especially the lay judge, should be soliciting or accepting ex parte advice on such matters from counsel from either side.

5. Indeed, it has long been recognized that the investigation under Article 32 is judicial in nature. United States v. Samuels, 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959). Clearly for that premise to have viability, the investigating officer must be viewed as a judicial officer, and function accordingly.

6. The use of lay judges has been the subject of frequent criticism by the commentators. See generally Comment, Long Overdue-Process; California and the Lay Judge, 63 Ky.L.J. 490 (1974–75); Note, Limiting Judicial Incompetence: The Due Process Right to a Legally Learned Judge in State Minor Court Criminal Proceedings, 61 Va.L.Rev. 1454 (1975); Note, Justice Courts in Oregon: An Introduction, 53 Or.L.Rev. 411 (1974). The competence of laymen to render judicial decisions, as noted in the text, has been repeatedly challenged at the Supreme Court. We too, have had occasion to examine the problem primarily in review of determinations as to the justification of pretrial confinement. See Fletcher v. Commanding Officer, 2 M.J. 234 (C.M.A.1977).

In addition to problems of misperception and inability to follow and apply judicial standards, it has often been suggested that in situations where the only source of information to explain the substantive issues to the lay judge is either the police or the prosecutor, the "flavor" of the decisions rendered is distinctly pro-government. The authors of the above-cited Oregon study further commented that many of the lay judges fell into a pattern of not reading and studying available materials and statutes, but instead simply chose to go directly to the police or prosecutor for advice. Certainly this is a situation ripe for abuse, and at odds with the stated purposes of Article 32. We note that the system employed by the Navy of utilizing judicially trained personnel to conduct the Article 32 investigation serves to alleviate most of these objections. It further avoids the need for attempts to resolve whether the advice sought was simply a "procedural" or "legal" matter, as the judicially trained personnel are schooled in both, and equipped to deal with these matters without dependence on counsel from either side.

7. Clearly the standards set forth by the American Bar Association and the long-standing

preme Court has sanctioned the use of lay judges only upon satisfaction that the officeholder is neutral and independent, and is able to render a detached judgment on the given question or controversy. *Shadwick v. City of Tampa,* 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972).[8] The Court has recently concluded that it is compliance with the standards of proper judicial conduct, not specific legal training, which must control the disposition of the given case. *North v. Russell,* 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976).[9]

Application of these concepts to the question presented in the instant case demonstrates the defect in this Article 32 investigation, as well as the underlying weakness of our previous method of analysis. This investigating officer, despite the ready availability of an impartial legal advisor, chose to conduct ex parte communications with the man he knew would ultimately prosecute the case. We believe that in view of the contents of the matters discussed [10] and the ex parte nature of these conversations, the standards of neutrality, detachment, and independence demanded by Article 32, and required by the Supreme Court, have been violated. Further, they directly conflict with the provisions of the ABA Standards Relating to the Administration

of Criminal Justice, which we consider applicable to the pretrial investigation. Those standards specifically provide: [11]

> The trial judge should insist that neither the prosecutor nor the defense counsel nor any other person discuss a pending case with him ex parte, except after adequate notice to all other parties and when authorized by law or in accordance with approved practice.

We, therefore, conclude that this Article 32 investigation was defective under these standards.

We cannot complete our discussion of this issue without examination of our holding in *United States v. Young,* 13 U.S.C.M.A. 134, 32 C.M.R. 134 (1962), which counsel for the government have argued is dispositive. In *Young,* a majority of this Court held it was permissible for one attorney to serve the dual functions of legal advisor to the Article 32 investigating officer and prosecutor.[12] The majority chose to focus its inquiry on whether that attorney participated in the actual investigation to such an extent as to either usurp the duties of the investigating officer, or to become an associate investigator, and hence be statutorily disqualified under the provisions of Article 27(a).[13] Although such an inquiry may be useful in

---

guidelines set out by the Supreme Court must be considered. *See Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

**8.** *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

**9.** *But see* Mr. Justice Stewart's dissent in *North v. Russell,* 427 U.S. 328, 339, 342–46, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), wherein he comments on the lack of fundamental fairness to any hearing conducted by a judge who is ignorant of the law. *Cf. Gordon v. Justice Court,* 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974). Mr. Justice Stewart further denounced any suggestion that a trial de novo could "cure" the problems as being in direct conflict with the case of *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). This position was seemingly reaffirmed recently in *Connally v. Georgia,* 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977). However, we need not resolve this apparent conflict, the question of fundamental fairness raised by Mr. Justice Stewart, nor whether *Ward* and *Connally* are limited to instances of

financial interest in the outcome by the given judge to determine the issue before us, since we are satisfied that the situation presented in this case violates the Congressional intent underlying Article 32.

**10.** *See* notes 3 and 4, *supra.*

**11.** ABA Standards, The Function of the Trial Judge § 1.6 (1972). It is further provided that it is unprofessional conduct for either the prosecutor or defense counsel to engage in such conversations. ABA Standards, The Prosecution Function § 2.8(c) (1971); The Defense Function § 1.1 (1971).

Indeed, Major Payne could not have properly sought the advice concerning *substantive* questions surrounding the search and seizure in this case from Major Runke in the ex parte fashion he utilized with Captain Gravelle.

**12.** *Accord, United States v. Plaut,* 18 U.S.C.M.A. 265, 39 C.M.R. 265 (1969).

**13.** Uniform Code of Military Justice, 10 U.S.C. § 827.

resolution of certain aspects of the statutory qualifications of the prosecutor, it has created a cumbersome and unsatisfactory method of analysis which consistently fails to evaluate whether the Congressional intent underlying Article 32 of providing an impartial pretrial investigation has been met.[14] We believe that Judge Ferguson, in his dissent in *Young,* correctly observed that although a counsel can appear in his role as prosecutor to help establish the validity of the charges and to develop the case for the government,[15] he cannot assume the function of assistant to or counsel for the investigating officer. As Judge Ferguson so aptly observed in *Young*:

> When the committing magistrate and the prosecutor occupy the relationship of attorney and client, it is clear to me the Government receives an undue advantage. . . .
>
> \*    \*    \*    \*    \*    \*
>
> . . . [W]hen the prosecutor's identity is clothed with appointment as the investigating officer's own attorney, he is placed in a position in which his recommendations and advice will surely be accorded unfair attention.

13 U.S.C.M.A. at 141, 32 C.M.R. at 141.[16] We share Judge Ferguson's conclusion that the majority opinion in *Young* was "regrettable," for its application was at odds with the design of Congress under Article 32 to create an "impartial device to discover the evidence against the accused and to screen

out baseless charges." *Id.* To the extent that *Young* and its progeny condone or permit counsel for either the government or the accused to serve as the legal advisor to the Article 32 investigating officer, and thereby represent a view inconsistent with that expressed in this opinion, those decisions are overruled and no longer represent the law of this Court.

Although we determine that the Article 32 investigating officer was acting in violation of the applicable standards of conduct for the judicial office he served, it is nonetheless incumbent upon us to examine the record for a determination of whether this impropriety prejudiced the appellant. We are not unmindful of the inherent difficulties presented by requiring a defendant to demonstrate the prejudice resulting from improper actions by a judicial officer, the full extent or text of which he may be unaware in part or whole. We, conclude that this is a matter requiring a presumption of prejudice. Absent clear and convincing evidence to the contrary, we will be obliged to reverse the case. Upon examination of this record under this presumption, we determine that this Article 32 investigating officer's actions, although improper, do not require reversal,[17] as the presumption was overcome through the testimony of Major Payne at trial and other matters presented by the government. That we do not now choose to view this matter as one within the narrow category of error per se

14. These have been described as establishing a method of discovery, elimination of command influence, and the elimination of the forwarding of baseless charges. *See United States v. Samuels, supra.*

15. *See United States v. Weaver,* 13 U.S.C.M.A. 147, 32 C.M.R. 147 (1962). Similarly, it is recognized that proper performance of the prosecution function requires the interviewing of witnesses, the taking of depositions, and general investigation and legal research to support the government position. *See United States v. Schreiber,* 5 U.S.C.M.A. 602, 18 C.M.R. 226 (1955); *United States v. Calvino,* 37 C.M.R. 730 (N.B.R.1967); *United States v. Hounshell,* 19 C.M.R. 906 (A.F.B.R.), *modified on other grounds,* 7 U.S.C.M.A. 3, 21 C.M.R. 129 (1956). Indeed, examination of the applicable standards encourages investigation within proper bounds; however, clearly performance of that

function cannot entail ex parte advising of the Article 32 investigating officer as occurred in the instant case.

16. Judge Ferguson's observations 15 years ago have found support in empirical studies such as the aforementioned Oregon project.

17. Our examination of the relationship between the trial counsel and the Article 32 investigating officer lead us to conclude that the appellant's second contention that the trial counsel's actions were such as to make him an investigator within the terms of Article 27(a), UCMJ, 10 U.S.C. § 827(a), and, hence, statutorily disqualified, is without merit. *See United States v. Young,* 13 U.S.C.M.A. 134, 32 C.M.R. 134 (1962).

should not be interpreted as any indication of approval or sanction of the practice found in this case. In future cases when testing for prejudice, we will resolve doubts against the judicial officer who participates in such a practice.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

## APPENDIX I

### Cpt. Gravelle

#### 30 Oct

#### 1, 4, 11, 14, 18, 21, 29 Nov

Find location for hearings that has dignity.

Investigator is seeker of truth and must be impartial.

Witnesses will probably be numerous enough to require several sessions.

When investigation is complete, forward it to Col Livingstone.

Review all evidence to determine if enough to proceed with charges.

Use tape recorder at hearing and legal clerk to take notes.

Presented facts of case and charge sheet.

Determine if Col DiGrazia had probable cause for authorized arrests and search.

Sp5 Payne is radio mechanic and does 1st and 2nd level maintenance.

Rule of privilege communication will probably prevent Mrs. Payne from testifying.

Mrs. Johnson may be the prime witness, but she may be reluctant to testify because of fear.

Can unit inventory their documents.

Sequencing witnesses.

Calling witnesses.

Obtaining translator.

Best witness when two involved, e. g. Maj Bryant vs. Mr. Ceresinrie.

How to get Mrs. Johnson in to testify.

Who were present when Col DiGrazia was briefed.

Were there sufficient grounds for approval of a search.

Called Mannheim—Sp Payne to be released 6 Nov.

Can each witness' testimony be summarized rather than verbatim.

Why are some photos dated 16 Oct and some 14 Oct.

Can fingerprints be taken off plastic holder of KAC codes.

Do not ask Sp Payne any questions when delivering letter of notification.

Can Mrs. Payne's confession and direct implication of her husband be used.

Names of agents who did what and their telephone numbers.

What type security clearance is needed for FOUO material.

Security termination was invalid.

Sp Payne had previously seen a psychiatrist.

Read discussion of offenses Ck 28 esp Proof.

Handwriting expert.

Rules for evidence less rigid (more relayed) during Art. 32 investigation than during court-martial.

Proof beyond a reasonable doubt is not required in order to make a recommendation.

COOK, Judge (concurring in part and dissenting in part):

In the single assignment of error on which the Court granted review, two questions were presented as to the effect of trial counsel's conduct in the proceedings prior to trial. The first question was whether the accused was prejudiced "by the failure to have a fair and impartial investigation in that the trial counsel participated in said hearing in the role of investigating officer"; the second matter was whether trial counsel was "statutorily disqualified within the meaning of Article 27(a), Uniform Code of Military Justice," which, in pertinent part, provides that no person shall act as trial

counsel if he previously "acted as investigating officer, military judge or court member." Although the majority conclude that trial counsel was not disqualified, they, nonetheless, declared that "*Young*[1] and its progeny . . . no longer represent the law of this Court." I agree with, and, in fact, the record compels, their conclusion, but I am not persuaded that *Young* deserves summary burial. I disagree, therefore, with that part of the majority opinion that consigns *Young* to the graveyard of overturned cases.

Turning to the manner in which the Article 32 investigation was conducted, the accused contends that Major Payne abandoned the impartiality required of him as an Article 32 Investigating Officer, and thereby, in the language of the majority opinion, effected "a derogation of the judicial functions inherent in that office." The majority conclude that the Investigating Officer acted improperly in consulting with trial counsel without notice to, and in the absence of, defense counsel, regarding certain matters relating to the conduct of the investigation. I also agree with that conclusion. As the Court held in *United States v. Hurt*, 9 U.S.C.M.A. 735, 751, 27 C.M.R. 3, 19 (1958), "a party to a proceeding who will be affected by a proposed action therein is entitled to notice of the action and to an opportunity to present his views in regard to it." The principle is the same as that expressed in the ABA standards quoted by the majority. However, it is important, I believe, to note that Major Payne also consulted with defense counsel. The record does not show the nature or number of these discussions, but the omission is not surprising, considering that the inquiry was directed to the defense claim that Major Payne had become "partial and prejudiced" because of his "close contact" with trial counsel. To me, the major's recourse to both counsel is a weighty indication, not that he was purposely secretive, but, rather, that he desired, as he testified, to obtain necessary procedural information from "persons familiar with the case."

The majority conclude, and the record demonstrates, that despite his procedural transgression, Major Payne conducted the investigation in conformance with the strict requirements of impartiality demanded by Article 32. I, unreservedly, agree with that conclusion. However, remarks in footnote 6 of the majority opinion on certain legal concepts involved in the accused's challenge to Major Payne's conduct impel me to further comment.

Trial counsel informed Major Payne that the rules of evidence for an Article 32 investigation were "more relaxed" than the rules at a trial, and that, unlike the requirement for a finding of guilty at trial, a recommendation by an investigating officer did not have to be based on evidence establishing guilt beyond a reasonable doubt. Major Payne testified he read the same information as to the difference in the rules of evidence in Department of the Army Pamphlet No. 27-17 (June 1970), to which he had been referred by trial counsel.

An Article 32 investigation does not, in fact, require that a recommendation by the investigating officer that a charge be referred to trial be predicated upon evidence sufficient to establish guilt beyond a reasonable doubt. Submission of a formal report and recommendation for trial by general court-martial operates, in material part, only as a certification that "to the best of his knowledge and belief . . . the matters set forth in the charges as to which . . . (the investigating officer) recommends trial are true." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 34e. Nor does Article 32 mandate that the rules of evidence and the degree of proof at an Article 32 hearing be the same as those at a trial. Constitutionally, and in the Federal criminal practice, preliminary proceedings are not conducted according to the rules of evidence and the burden and degree of proof in effect at a trial. Fed.R.Ev. 1101(d); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct.

1. *United States v. Young*, 13 U.S.C.M.A. 134, 32 C.M.R. 134 (1962).

613, 38 L.Ed.2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). As neither the Uniform Code nor the Manual for Courts-Martial prescribes a procedure contrary to that in the civilian courts, the military procedure can properly comport with the civilian. *United States v. Fisher*, 4 U.S.C.M.A. 152, 15 C.M.R. 152 (1954). I am unable to discern anything in the advice as to these matters that can reasonably be construed as being improper.

Finally, the majority condemn the discussion of the "legality of the search," as "most critically" demonstrative of a violation of the requirement of impartiality inherent in the "role" of an Article 32 officer. I am not at all sure that an investigating officer should, or can, properly inquire into the legality of a search. Certainly, in the Federal civilian criminal system that circumstance is not a matter for consideration by the grand jury in determining whether the evidence justifies indictment. *United States v. Calandra, supra.* Article 32(a) provides that the investigation "shall include inquiry as to the truth of the matters set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline." As I construe this provision, it does not prescribe inquiry into whether evidence before the investigating officer may be subject to exclusion at trial. Neither does the Manual contain any such directive. *See* paragraph 34, MCM. In any event, as noted earlier, in terms of the content of the discussion of this subject, the majority conclude, and I agree, that it did not prejudice Major Payne against the accused.

For the reasons indicated, I join in affirmance of the decision of the Court of Military Review.