UNITED STATES, Appellee,

v.

Private (E–2) Elon George GRIMM, III, SSN 313–74–2014, United States Army, Appellant.

CM 437235.

U. S. Army Court of Military Review.

25 Jan. 1979.

---

4. *See United States v. Woolery*, 5 M.J. at 33.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain Peter A. Nolan, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain Harry J. Gruchala, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial of assault, wrongful possession of marijuana and wrongful transfer of marijuana.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of $200.00 pay per month for twelve months, and reduction to the grade of Private E–1. The convening authority approved the sentence. Appellant asserts three errors as requiring reversal.

### I

In his first assignment of error appellant argues that the Article 32[2] investigating officer (hereinafter referred to as the I.O.) violated his role as a judicial officer by engaging in ex parte consultations with the chief of military justice from the office of the staff judge advocate.[3] He cites *United States v. Payne*, 3 M.J. 354 (C.M.A.1977), for the proposition that an I.O. is precluded from having ex parte discussions about a case with members of the prosecution and that he is equally precluded from discussing

the case with "any other person" without prior notification to the defense. Appellant then asserts that the chief of military justice was, in fact, the chief of the prosecution branch.

We will assess his interpretations of *Payne* in inverse order. The actual facts in that case are significant. There, a legally trained advisor who did not serve in a prosecutorial function was made available to the I.O.[4] Instead of seeking advice from the detailed advisor, the I.O. sought out and obtained the advice of the actual prosecutor who, according to the court, the I.O. "knew would ultimately prosecute the case."[5] The court approved on constitutional grounds the use of non-legally trained personnel as I.O.s provided they are neutral, independent, and able to render a detached judgment on the given question or controversy.[6] The court then reexamined its analysis and holding in *United States v. Young*, 13 U.S.C.M.A. 134, 32 C.M.R. 134 (1962), and found them flawed because it failed in *Young* to appreciate fully the special relationship and influence of a legal advisor to an I.O. In *Payne*, the court adopted the view of Judge Ferguson who dissented in *Young* that there is essentially a unity of identity in the advisor and I.O. for purposes of testing neutrality, independence and detachment. The court then held

1. The offenses were in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934.

2. Article 32, UCMJ, 10 U.S.C. § 832.

3. The actual position title was chief of criminal law and *not* chief of military justice. Appellate defense counsel also tangentially attacks the adequacy of the pretrial investigation by references in his pleadings to a "skimpy investigation" and a "partially investigated charge." We disagree with his characterization and find the investigation to be adequate both in scope and depth.

4. *United States v. Payne*, 3 M.J. at 354, n. 1 (C.M.A.1977).

5. *Id.* at 356. In fact, his existing familiarity with the case was the reason he was consulted by the I.O.

6. *Id.* citing *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). *Shadwick* involved the issue of whether non-

lawyer municipal court clerks qualified as neutral and detached magistrates in order to issue arrest warrants for violations of city ordinances. The Court in *Shadwick*, as it had in earlier cases, gave as the aim of the warrant clause of the 4th Amendment the requirement that an independent assessment of probable cause by a neutral and detached individual (however labeled) be made before a warrant is issued. The Court then considered the particular situation of the clerks and found that they were appointed by the executive branch but worked within the judicial branch subject to the supervision of the municipal court judge. They were not assigned to the police or prosecutor, and the Court found them not disqualified per se on the grounds of neutrality and detachment. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), was also cited in both *Shadwick* and *Payne* as an example of a lack of neutrality and detachment where warrants were issued by the prosecuting attorney.

that ex parte communications between the prosecutor and the I.O. concerning the case violated the statutory and constitutional requirements since the prosecutor thereby became the advisor of the I.O. They held further that it would have been improper for the I.O. to consult ex parte on substantive matters with even the non-prosecutor advisor who had been made available.[7]

We read *Payne* as forging two tests for error. First, does the individual furnishing *any* advice to an I.O. serve in a prosecutorial function?[8] If so, there is error. Second, did the I.O. obtain advice from a non-prosecutor advisor on a *substantive* question without prior notice to all other parties? If so, again there is error.

Errors relating to the Article 32 investigation must be raised at trial by means of a motion for appropriate relief or they may be waived.[9] Where such errors are preserved by a timely motion, they will only constitute grounds for reversal where the accused has been prejudiced. For errors of this nature, however, prejudice will be presumed absent convincing evidence to the

contrary.[10] In the case *sub judice*, timely motion was made thereby "triggering" application of the *Payne* tests.

Turning to the first test, the chief of criminal law[11] who "briefed" the I.O. in this case outlined his duties and responsibilities as being administrative in nature.[12] He stated that his position generally required him to represent the interests of the command as opposed to requiring him to represent the interests of the individual soldier.[13] His branch[14] consisted of a civilian attorney, an administrative warrant officer, a court reporter, approximately six clerks and a chief trial counsel under whom served four trial counsel. His duties did not include furnishing advice to the military police or CID.[15] He was principally an advisor making recommendations to trial counsel and the staff judge advocate and his deputy. His recommendations could be to dismiss charges or otherwise reduce the disposition level or he could concur in the charges and proposed disposition. In practice, he testified, he more often than not leaned toward lesser dispositions than those proposed by subordinate commanders in

7.  *United States v. Payne*, 3 M.J. at 356, n. 11 (C.M.A.1977).

8.  We believe that reason mandates that the "advice" *Payne* condemns not include patently trivial matters, e. g., scheduling of a hearing room or arranging for a legal clerk or court reporter to assist the I.O. Notwithstanding, the better practice would be to minimize I.O. and prosecution contacts on even administrative matters.

9.  Paragraph 67*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

10.  *United States v. Payne*, 3 M.J. at 357 (C.M.A.1977).

11.  The regular duty title of the advisor, while relevant, is not dispositive of whether he performs a "prosecutorial function" within the meaning of *Payne*.

12.  ". . . [T]he Chief of Criminal Law is responsible for the overall administration of military justice at Fort Ord. Included in that is primarily administrative supervision over the processing of cases from the time charges are preferred until final action is taken and the case is dispatched to Washington, D. C., if appropriate. Additionally, I'm responsible for drafting certain types of command policy on

military justice matters, reviewing regulations, drafting regulations, reading legal opinions, and I exercise nominal supervision over the trial counsel."

13.  A position no more antagonistic to individual defendants than that of judges or legislators (who represent society) or the convening authority or staff judge advocate (who represent a military command). Each of these persons (including the commander) have a commitment to seek justice for their society/command and individuals therein. Merely because a prosecutor has a duty to seek justice, not to convict, does not mean that others whose duty it is to seek justice are prosecutors.

14.  There were also the defense, legal assistance, claims and administrative law branches plus the staff judge advocate and his deputy.

15.  Where no trial counsel was available, he had on isolated occasions advised the police regarding whether or not suspects should be listed as subjects of reports. On the same basis, he might furnish advice to commanders. He did not furnish advice to police, criminal investigators, or subordinate commanders in the case *sub judice*.

some classes of cases. Both trial and defense counsel would discuss his recommendations with him. He did not direct the trial tactics or strategy of trial counsel. He did "assign" trial counsel to cases,[16] and he did rate them on their efficiency reports,[17] but he never appeared as a trial counsel. The chief of criminal law characterized his position as being that of an administrator monitoring pretrial and post-trial processing with a view to speedy and just disposition. Essentially, he was the alter ego of the staff judge advocate in the field of criminal law, and we find that he was not performing a prosecutorial function in the sense of *Payne*. Accordingly, there is no violation of the first part of *Payne*.

■ We next ascertain whether any advice on substantive questions was furnished. Trial counsel at trial and government appellate counsel both concede that substantive advice was given regarding the role a weapon would have to play to support an aggravated assault charge (as this accused was charged). Inasmuch as counsel for the accused and the prosecution were not given prior notice, we must find a violation of *Payne* and test for prejudice. Both the chief of criminal law and the I.O. testified without challenge that the advice on the substantive question was extracted directly from the current Manual for Courts-Martial, United States, 1969 (Revised edition). On this basis, we are satisfied by clear and convincing evidence that the accused suffered no prejudice.

## II

■ The appellant, in his second assignment of error, asserts that the vegetable matter introduced over his objection at trial in support of the possession specification was not adequately shown to be the same material that was seized from him and from his room. In short, he claims a gap in the chain of custody from the time the material was mailed via registered mail to the laboratory at Fort Gordon until it was received via registered mail at Fort Ord. He does not challenge the handling of it at Fort Ord either before or after it was sent and returned.[18] Subsequent to its receipt at Fort Ord, it was tested by a CID agent utilizing a widely recognized field test. The results as testified to by the agent were positive for marijuana on the vegetable matter and for marijuana residue on various pieces of paraphernalia.[19] We are satisfied that we may presume regularity of systematic handling on the part of neutral chemical analysts.[20] We are likewise satisfied that we may presume regularity of systematic handling on the part of postal authorities.[21]

16. This would not per se disqualify him any more than it would disqualify the staff judge advocate or the convening authority (who, by statute, actually details counsel).

17. This also does not per se make him a prosecutor. If he did not rate the trial counsel, someone higher in the structure of the office of the staff judge advocate would do so (probably the staff judge advocate or his deputy). We do not consider it inconsistent with independence, neutrality and detachment to evaluate a partisan advocate. The reverse situation where one who is to be independent, neutral and detached is evaluated by a partisan advocate *is* inconsistent.

18. The vegetable matter seized was contained inside two plastic "baggies." The "baggies" (with their contents) were marked at the time of seizure and successively transferred through various police and investigative agents to the CID Evidence Custodian who mailed the items to Fort Gordon with an accompanying laboratory analysis request. Each agent who had

custody of the "baggies" testified as to their identity and safeguarding. Similar testimony was elicited as to the identity and safeguarding of the materials after they were received at Fort Ord. No chain of custody receipt for property was received in evidence.

19. The paraphernalia had also been sent to and returned from Fort Gordon. However, identifying initials and dates were inscribed on the items themselves, and witnesses testified as to their unchanged appearance from the time of seizure. Appellant does not allege any gap in this chain of custody.

20. *United States v. Nault*, 4 M.J. 318, 320, n. 8 (C.M.A.1978).

21. We cannot imagine a class of persons less interested in tampering with or adulterating exhibits than postal clerks. Their concern is solely to move pieces of mail accurately, securely and speedily. *See generally*, 18 U.S.C. §§ 1700, et seq. Where mail is handled by

There is no evidence in this case that challenges either presumption. Accordingly, we find the appellant's assertion of a gap in the chain of custody to be without merit with regard to the marijuana seized from his person and room.

■ Appellant also asserts a gap in the chain of custody of the marijuana the court found he transferred to another soldier who testified at trial. This witness retained the material on his person immediately after he received it from the appellant who represented it as being a particular high grade marijuana. At the lunch hour that day, the witness went to his off-post quarters where he deposited the material. After the end of the duty day, the witness who testified to vast experience with marijuana returned to his quarters and smoked some of the material received from the appellant. He described the effect as being identical to that he always obtained from marijuana. We are satisfied that this highly experienced lay witness whose expertise was unchallenged would not pay twenty dollars of his own funds for ¼ ounce of a substance unless he, after smelling it, feeling it and viewing it (as he testified he did) prior to purchase, was convinced it was marijuana.[22] There is no evidence that anyone tampered with it or even had access to it until it was later smoked by the witness. Again, we are satisfied that this witness was sufficiently experienced to discern a "switch" and that the material was unchanged. Based upon the entire record, we are convinced beyond a reasonable doubt that the appellant transferred approximately ¼ of an ounce of marijuana to the witness as charged. We are likewise convinced that this ¼ ounce was originally part of approximately a half pound of marijuana depicted in a photograph in evidence, the ownership of which marijuana was admitted to by the appel-

lant. Finally, based upon the testimony and evidence of record, we are convinced beyond a reasonable doubt that appellant possessed approximately ½ pound of marijuana as charged.

### III

In his final assignment of error, appellant argues that the military judge erred in refusing to give the standard accomplice instruction pursuant to the request of the trial counsel. This request was specifically aimed at the testimony of the witness who stated he bought ¼ of an ounce of marijuana from the appellant. It has long been held that the purchaser of illicit drugs is an accomplice for purposes of the accomplice instruction in the trial of the seller. *United States v. Allums*, 5 U.S.C.M.A. 435, 18 C.M.R. 59 (1955). We view the recipient as an accomplice to an unlawful transferor in this same sense.[23]

■ A general instruction on credibility of witnesses is not an adequate substitute for a requested accomplice instruction due to the particularly questionable integrity of accomplice testimony. *United States v. Winborn*, 14 U.S.C.M.A. 277, 34 C.M.R. 57 (1963).[24] The failure to give the requested accomplice instruction was, therefore, error.

■ Testing this error for prejudice, we are convinced that there is no fair risk that, had a proper instruction been given, the scale would have tipped in favor of the appellant. There is abundant corroboration as to both possession and transfer in the appellant's admission of ownership of approximately one-half pound of marijuana within the same time frame as the witness testified he bought one-fourth ounce from a cache of about one-half pound. The appellant had a "baggie" of marijuana and a

military personnel, *see also* Chapter 7, Army Regulation 65–1 and Chapter 2, Army Regulation 65–75.

**22.** The witness was not a police informant or agent but was purely a "customer in the marketplace."

**23.** Naturally, if he is an undercover police agent or an informant working under police direction, his duty authorizes him to receive and possess contraband in connection with a case. In such circumstances, we do not believe paragraph 153a, MCM (Rev. ed.), requires an accomplice instruction.

**24.** *See also* paragraph 153a, MCM (Rev. ed.).

scale concealed on his person at the time of his apprehension. A bag of marijuana, a second scale, a box of "baggies" and a grocery sack identical in appearance to the sack from which the witness testified he selected his purchased baggie was seized in appellant's room and locker. The witness' testimony on the related assault charge was also strongly corroborated. Moreover, in order to qualify him as a lay expert on marijuana, the Government elicited from the witness that he was a very frequent user of marijuana. Certainly the very qualification of the witness in this manner could not fail to jaundice the view of this soldier by the court-members. The accomplice instruction could have done no more to this end within the context of this case. Accordingly, we find no prejudice in this failure to instruct.

The findings of guilty and the sentence are affirmed.

Judge DeFORD not participating.

JONES, Senior Judge, concurring:

I concur with Judge Lewis' reasoning as well as the results in this case. I want to comment, however, on *United States v. Payne*, 3 M.J. 354 (C.M.A.1977), which furnishes the basis for this Court's conclusion on the first error discussed above.

The United States Court of Military Appeals in *Payne* held that the Article 32 investigating officer's ex parte communication with the prosecutor violated the "standards of neutrality, detachment, and independence demanded by Article 32, and required by the Supreme Court." The Court did not stop there but went on to apply the American Bar Association Standards for Criminal Justice, the Function of the Trial Judge, to the investigating officer. Standard 1.6, quoted in *Payne*, is the basis of that Court's ruling that the investigating officer may not consult with anyone on a substantive matter without giving adequate notice to all other parties.* That rule was identified by Judge Lewis as the second test in *Payne*.

I am in agreement with the principles in the ABA Standards and their applicability to the military justice system. Sometimes, however, the standards are not directly transferable to courts-martial proceedings. I think this is one such instance.

The Article 32 investigating officer is not a trial judge. He does not preside over a trial proceeding; he does not reach findings of guilt or innocence; and he does not impose sentence. He inquires into the evidence on a particular offense or offenses, and he makes non-binding recommendations on the action to be taken. He could probably be more accurately described as a one-man grand jury.

The Article 32 investigating officer should be required to list in his report the names of all persons from whom he obtained legal advice on substantive questions, but he should not be required to obtain the advice in an adversary proceeding. This would convert the investigation into a "mini-trial" and only cause delay without adding a concurrent benefit to the accused or the Government. There is no need to prevent him from obtaining advice on substantive questions from a neutral legal advisor, one not engaged in or associated with the law enforcement/prosecutorial function. There is ample protection, as *Payne* points out, in Article 32, UCMJ, to insure that the investigating officer is fair, impartial and independent. If an accused is not satisfied with the results of an Article 32 investigation or otherwise believes he may have been prejudiced by outside legal advice, he has the right to litigate the question by an appropriate motion at trial, as occurred in this case.

---

* Strictly read, the rule would preclude the current practice in most Article 32 investigations of holding ex parte proceedings with the accused and his counsel.