UNITED STATES, Appellee,

v.

Private E–2 Brian B. SAUNDERS, SSN 574–16–7252 United States Army, Appellant.

CM 439941.

U. S. Army Court of Military Review.

27 Aug. 1981.

Mr. John Loff, Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Grifton E. Carden, JAGC, and Captain Dennis E. Brower, JAGC.

Captain Robert D. Higginbotham, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Major John T. Meixell, JAGC.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

We must determine whether appellant's lack of mental responsibility during the course of the Article 32, UCMJ, 10 U.S.C.A. § 832, investigation requires us to set aside the findings of guilty and the sentence. The appellant was sane at the time of the offenses and competent at the time of trial, and counsel assures us that the appellant is competent during the course of these proceedings.

The appellant was charged with two aggravated assaults on his squad leader and with wrongfully disposing of military property of the United States in violation of Articles 128 and 108, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 908. The general court-martial with members sentenced him to be confined at hard labor for one year and to forfeit $250 pay per month for eight months. The convening authority approved the sentence.

At the initial session of the Article 32, UCMJ, investigation, the appellant's civilian defense counsel requested a psychiatric evaluation of appellant on the ground that appellant was not able to participate in his defense. The appellant was evaluated briefly at the Air Force hospital in Alaska but, because appellant had attempted to escape from his guards, the commander denied permission for the appellant to be taken off post to be evaluated by a civilian psychiatrist. The civilian psychiatrist was permitted to evaluate appellant at the local post stockade but this did not occur until after the investigation was completed.

The Article 32, UCMJ, investigating officer determined that the appellant was competent to proceed with the investigation based upon the investigating officer's personal observation of appellant, the report of the Air Force doctor who examined him briefly and reports of psychiatric evaluations 2–3 months earlier at the Air Force hospital in Alaska and at Letterman Army Medical Center in San Francisco. The investigating officer recommended trial by general court-martial and the convening authority so referred the charges.

In a preliminary session of the trial pursuant to Article 39(a), UCMJ, the appellant sought a new Article 32 investigation on several grounds, including one concerning

his competency at the time of the investigation. The military judge denied the motion for a new investigation but, after the presentation of evidence, ordered a sanity board inquiry. The information furnishing the basis for ordering the inquiry should have alerted the judge to the need to defer his ruling on the request for a new Article 32 investigation.

When the court-martial reconvened several weeks later at another Article 39(a), UCMJ, session, a new military judge was presiding. He announced that the rulings of the military judge at the earlier session were the law of the case and he effectively precluded counsel from any further litigation of those issues by allowing only motions that were not heard and decided previously.

The issue of mental responsibility was litigated fully as part of the case on the merits. The members of the sanity board were unanimous in their conclusion that appellant was sane at the time of the offenses and was competent to stand trial. Two members of the sanity board testified, however, that during the period of the Article 32, UCMJ investigation the appellant was suffering from a mental illness that made him not responsible for his thoughts and behavior.[1] The third member of the board did not testify.

A civilian psychiatrist presented by the defense stated that appellant was acutely psychotic and thus unable to conform his conduct to the law during the period of the investigation and that there was a "great probability" that he was unable to conform his conduct to the law at the time of the offenses. All psychiatrists were therefore in agreement as to appellant's lack of competence during the Article 32, UCMJ investigation.

The appellant, in this appeal pursuant to Article 66, UCMJ, 10 U.S.C.A. § 866, has not raised the issue of mental responsibility

at the time of the offenses or competence to stand trial but instead has focused upon his incompetence during the Article 32, UCMJ investigation. He argues that reversal is required as it was error *per se* to proceed with the investigation when he, the accused, was not competent. When this "substantial and fundamental pre-trial right" was violated and when appellant made a timely demand for compliance as he did here, appellant asserts that the military judge had no choice but to grant the motion for a new Article 32, UCMJ, investigation. In support of his position, appellant has called our attention to *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) and *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958).

We agree with appellant that the ability to understand the proceedings and to participate in his defense is a substantial pre-trial right and that when the appellant was required to undergo an Article 32 investigation while not mentally competent he was denied that right. The military judge erred in not reconsidering the motion and granting a new Article 32, UCMJ, investigation. To quote from *Mickel*:

[I]f an accused is deprived of a substantial pretrial right, on timely objection he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. 26 C.M.R. at 107.

The Court of Military Appeals reaffirmed and extended this position in *United States v. Donaldson*, 23 U.S.C.M.A. 293, 49 C.M.R. 542 (1975), *United States v. Chestnut*, 2 M.J. 84, 85 n.4 (C.M.A. 1976), and *United States v. Chuculate*, 5 M.J. 143 (C.M.A. 1978).

In view of *Mickel, Donaldson, Chestnut,* and *Chuculate* this Court has no choice but to set aside the findings and sentence and authorize a new Article 32, UCMJ, investigation and if then appropriate, a rehearing.

---

1. We equate this to an inability to understand the proceedings or cooperate with his defense counsel.

We are compelled to take this action even though we find no reasonable possibility of prejudice to appellant resulting from the conduct of the Article 32, UCMJ investigation during the period appellant was incompetent.[2] Appellant was ably represented by counsel at every phase of the proceedings. We have been unable to perceive nor has appellant been able to point to one single thing which could have been done but was not or would have been done differently had he been able to cooperate with his counsel during the investigation.

The appellant also asserts that a new Article 32 investigation should have been granted because the investigating officer departed from his judicial role in violation of *United States v. Payne*, 3 M.J. 354 (C.M.A. 1971). This issue was litigated thoroughly. The presumption of prejudice arising from *ex parte* communications by the investigating officer was dispelled by the testimony of the witnesses, with one exception. That exception concerned the investigating officer's conversation with appellant's battalion commander concerning the sanity issue. The other communications related to administrative and procedural matters. The conversation with the commander touched on the evaluation by the Air Force psychiatrist whose report was admitted in evidence at the investigation. The error, if any, arising from that conversation merged into and became a part of the error by the military judge in not granting a new Article 32 investigation because of the lack of competence of the appellant at the time of the investigation.

The findings of guilty and the sentence are set aside. A new Article 32, UCMJ investigation and if appropriate a rehearing may be ordered by the same or a different convening authority.

GARN, Judge, concurs.

LEWIS, Judge, dissenting:

It is beyond cavil that an accused has a right to be present at his own Article 32 investigation. I can think of no more meaningless gesture than to afford this right to physical presence while ignoring the fact that he is mentally "not there". To this extent, then, I join in my brothers' view.

We part company on the question of whether there was timely objection to what we have concluded was a defective investi-

---

**2.** We respectfully request the Court of Military Appeals to reexamine its position in *Donaldson, Chestnut*, and *Chuculate*, to the effect that an accused is entitled to the enforcement of a pretrial right without regard to whether such enforcement will benefit him at trial.

The rule announced in *Mickel* was based upon *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), a case involving the denial of the right to counsel at trial. *Mickel* also involved the denial of a right to counsel, but at a pretrial phase (Article 32 investigation) rather than at trial. A violation of the right to counsel is of such magnitude that it can never be harmless, *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and no test for prejudice will be made. *Glasser v. United States, supra*. But *see Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

The rights involved in *Donaldson, Chestnut*, and *Chuculate* are of lesser stature than the right to counsel and should be treated in the same manner as those constitutional errors tested under the harmless error rule. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *Moore v. Illinois, supra*.

The Court of Military Appeals followed the "test for prejudice" standard in *United States v. Cunningham*, 12 U.S.C.M.A. 402, 30 C.M.R. 402 (1961), and *United States v. Lopez*, 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970), cases involving objections raised at trial to a defective Article 32, UCMJ investigation (accuser was investigating officer; investigating officer had conducted an inquiry into the incident previously). The Court stated that defects in the pretrial investigation must be measured by the test of specific prejudice. Similarly in *United States v. Payne*, 3 M.J. 354 (C.M.A. 1977), the Court applied a test for prejudice to the improper actions of the Article 32 investigating officer.

We believe the rule in *Mickel* should be limited to the denial of the right to counsel. The instant case did not involve that right. *Cf. Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). We believe a test for prejudice is proper.

gation. It is clear to me that when the second military judge announced that he would regard the rulings of the first judge as "law of the case" and that he would consider only motions not previously heard and decided, he was simply stating that he would not retravel the same ground. Certainly where there are new facts—in truth, facts the product of the new sanity board ordered by the first judge—it would not be retraveling old ground. It is apparent to me that, at the time of the Article 39(a) session with the second judge, these defense counsel who so ably defended the appellant at every other juncture must have realized that new evidence not previously available upon the exercise of due diligence would almost certainly constitute grounds to reopen the issue of appellant's competence and his right to a new investigation.*

Accordingly, I view defense counsel's inaction before the new judge as a lack of timely objection. There being no objection at trial, we need not reverse absent specific prejudice. *See United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958). As counsel have been unable to point to any prejudice, as my brothers have found none, and as I find none, on this issue, I would affirm.

Because of my view of the matter of the appellant's competence at his Article 32 investigation, I am compelled to address the question of whether the investigating officer departed from his judicial role in violation of *United States v. Payne*, 3 M.J. 354 (C.M.A. 1971). Like the majority, I am satisfied that the presumption of prejudice arising out of *ex parte* communications by the investigating officer was dispelled by the testimony of the witnesses; however, unlike the majority, I do not except the conversation with the battalion commander from this conclusion. While this conversa-

tion may have touched on the evaluation of the Air Force psychiatrist and the sanity issues, the information conveyed from the commander merely consisted of the fact that the psychiatric examination was concluded and its result. In short, it was principally of an administrative informational nature. This conversation was followed by the investigating officer confirming this with the psychiatrist and arranging for a copy of his report. The report was received by the investigating officer who furnished copies to the defense team. On this basis, while the investigating officer may have improperly permitted the commander to relay the conclusion of the Air Force psychiatrist, it was nothing more than was later furnished to counsel.

While these telephonic *ex parte* conversations may technically violate the *Payne* prohibitions, they highlight the problems facing an investigating officer who has to make his own administrative contacts in assembling evidence and witnesses for formal sessions of the investigation. I cannot believe that Congress intended that the full panoply of the American Bar Association Canons of Judicial Ethics be applicable to investigating officers. Few could find fault with the notion that an investigating officer loses his required neutrality and detachment where he is receiving *ex parte* substantive advice from the person who will later prosecute the case as occurred in *Payne*. Here the communication was with a non-prosecutor and conveyed the same information that later came before the investigating officer properly.

Finding no prejudicial error, I would affirm both the findings and the sentence.

---

* The fact that no one has been able to point to any prejudice suggests that there was no advantage to have been gained by the accused in a new investigation. Delay might be won but delay *per se* is not always to an accused's advantage. I therefore accept the inaction of defense counsel as a tactical decision and do not view it as the product of an oversight which, because of the obvious grounds for reconsideration based on the newly discovered evidence, would border on inadequacy of counsel.