OPINION OF THE COURT
WALCZAK, Judge:
Contrary to his pleas, appellant was convicted of fraudulent use of a writing in support of a claim against the United States, a violation of Article 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 932 (1982). Appellant was sentenced by a general court-martial composed of officer members to confinement at hard labor for one year and forfeiture of $500.00 pay per month for twelve months. The convening authority approved the sentence.
The facts, as developed at trial, show that sometime in April or May 1982, appellant submitted a claim for shipment and storage damage to his household goods and furniture to the claims section of the staff judge advocate’s office in Fort Sam Houston, Texas. After the claims section reviewed his claim, appellant was instructed to obtain a second estimate for certain items. Upon receipt of the second estimate a member of the claims section noticed that the figures on the document appeared to have been altered. The matter was turned over to the Criminal Investigation Division (CID). The investigation by CID resulted in the charges against appellant.
The first question we consider is whether the military judge erred by not ordering a new Article 32(b), UCMJ, investigation. In this case, the investigating officer — a judge advocate who was serving as a legal assistance officer — trial counsel, assistant trial counsel, and the individuals who handled appellant’s claim were all acquainted with each other and assigned to the staff judge advocate’s office which received the false writing. Appellant contends that the investigating officer’s relationship to these parties created at least an appearance of partiality which mandated his disqualification.
In United States v. Payne, 3 M.J. 354, 355 (CMA 1977), the Court stated that in deciding whether an Article 32 investigating officer acted in violation of the applicable standards of conduct for that office, “the pertinent determination for a court must be whether the judicial nature of that office has been maintained.” Appellant argues the judicial nature of the office was breached in this case because the impartiality of the investigating officer might reasonably be questioned. See United States v. Castleman, 11 M.J. 562 (AFCMR 1981). We do not address whether the relationships among the parties in this case impugn the investigating officer’s impartiality. Even if we were to accept appellant’s argument, the record in this case clearly and convincingly demonstrates that the investigating officer conducted his investigation in conformity with the requirements of impartiality by Article 32. Payne establishes that an error in the Article 32 investigation is grounds for reversal only if the accused is prejudiced. No prejudice exists when the investigation complied with the statutory requirements.
Appellant also contends the trial counsel violated Canon 5 of the Model Code of Professional Responsibility[1] since trial counsel knew that individuals working in the staff judge advocate office were to be called as witnesses for the prosecution but nonetheless failed to withdraw from the case. See Model Code of Professional Responsibility DR 5-101(B) and 5-102(A) (1979). Appellant further argues that this violation of Canon 5, coupled with the circumstances of the case, create an appearance of professional impropriety in violation of Canon 9 of the Model Code of Professional Responsibility.
*386 Disciplinary Rule 5-101(B) provides that “[a] lawyer shall not accept employment in contemplated or pending litigation if he knows ... that he or a lawyer in his firm ought to be called as a witness.” Appellant analogizes the staff judge advocate’s office to a firm. Under appellant’s analysis, members of the claims section in the staff judge advocate’s office were members of the trial counsel’s firm. This contention is without merit. The claims section and criminal law section are separate units within a staff judge advocate’s office and do not constitute a “firm” for purposes of applying Canon 5.
State courts, construing the term “firm” as used in Canon 5, have found that the term refers to an organization whose members share a common financial interest in a case. See, e.g., People v. Superior Court of San Bernardino, 86 Cal.App.3d 180,150 Cal.Rptr. 156 (1978); Clausell v. State, [Current Reports] Law. Manual on Prof. Conduct (ABA/BNA) 155 (Fla.Dist.Ct.App. 13 Mar. 1984); State ex rel. Goldsmith v. Superior Court of Hancock County, 270 Ind. 487, 386 N.E.2d 942 (1979). Having defined the scope of Canon 5, these courts have held that the staff of a prosecutor’s office is not disqualified under Canon 5 from prosecuting a case because a member of the staff is a witness in the case. Members of such offices, the courts note, do not share pecuniary interests, only a statutory duty. The latter does not trigger the application of Canon 5. See also United States v. Hubbard, 493 F.Supp. 206 (D.D.C.1979), aff'd sub nom. United States v. Heldt, 668 F.2d 1238 (D.C.Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).
In the military the relationships among lawyers in a staff judge advocate’s office, like those in a prosecutor’s office, are not financial in nature. The mission of lawyers in a staff judge advocate’s office is to provide for the legal needs of the military, not to promote any self-interest. As the American Bar Association Committee on Ethics and Professional Responsibility recognized in an informal opinion, “[T]here is no partnership or association, strictly speaking, between military lawyers in a military legal office. The economic ties that bind the members of a private law firm are wholly absent.” ABA Comm, on Ethics and Professional Responsibility, Informal Op. 1235 (1972). Given that the association among lawyers in a staff judge advocate’s office is not economically based, we find the office does not constitute a “firm” for purposes of applying Canon 5.[2]
We also note that even if the claims section and criminal law section of the staff judge advocate’s office were considered a “firm”, the testimony of the witnesses in this case fall within sections 1 and 2 of Disciplinary Rule 5-101(B). These sections allow a lawyer to continue his employment if the testimony of the lawyer in his firm is related solely to an uncontested matter or to a matter of formality. In the case at bar the witnesses from the claims section testified about their receipt of the false writing and the administrative processing of the document. Their testimony was not contested; consequently, the above noted exceptions to the disciplinary rule are applicable. Since we find no violation of Canon 5, no violation of Canon 9 occurred as asserted by appellant.
The next issue we address is whether the military judge abandoned his *387 impartial role and became a partisan advocate for the government, thus depriving appellant of a fair trial. Appellant contends the military judge’s conduct revealed his lack of impartiality. Appellant specifically argues that the military judge’s questioning of various witnesses was improper. The test for determining whether a military judge has abandoned his role and become a partisan advocate is a subjective one. United States v. Masseria, 13 M.J. 868 (NMCMR 1982). The totality of circumstances must be considered. Although the military judge cannot lay aside his impartiality and become an advocate for one side or the other, he can, and sometimes must, ask questions to clear up uncertainties in evidence or further develop the facts. United States v. Hobbs, 8 M.J. 71 (CMA 1979); Manual for Courts-Martial, United States, 1969 (Revised edition), para. 546. Our review of the record discloses that the military judge’s conduct was nonpartisan and that his questions served a permissible purpose — to clarify ambiguities in the evidence.
Much of the conduct appellant relies upon to support his argument occurred in out-of-court sessions. During these sessions the military judge displayed his impatience with both trial and defense counsel. The record shows, however, that the military judge’s remarks did not chill defense counsel’s representation of appellant. Instead, defense counsel tenaciously pursued his client’s interest. While in one instance the military judge did state — during an out-of-court session held immediately after he questioned appellant — that appellant’s testimony was incredible and that the performance of both counsel was deficient, these statements only demonstrate the judge’s frustration with counsel. The statements do not establish that the military judge departed from his judicial role.
Appellant also argues that the military judge’s questioning of various witnesses establish his lack of impartiality. As an illustration of this point, appellant asserts the military judge, through his questioning, established the foundation for the admission of a government exhibit. We disagree. The witness’s responses to the military judge’s questions did not establish the admissibility of the exhibit. After questioning the witness and thereby clarifying the witness’s testimony, the military judge apparently realized that the legal premise upon which he had initially denied the admission of the exhibit was invalid. This realization, not the testimony of the witness, was the basis for admitting the writing. Moreover, with respect to the military judge’s questioning of other witnesses, these questions were consistent with the judge’s attempts to clarify ambiguous testimony and were not reflective of a determination to prosecute the government’s case.
The only limitation the military judge placed on defense counsel was to require him to inquire into matters that were relevant. Counsel in this case, as observed by the judge, had a tendency “to create smoke.” The limitation upon defense counsel was proper and did not unduly hamper the presentation of the defense’s case or prevent the defense from confronting the witnesses. Defense counsel was in no way intimidated or prevented by the military judge from conducting a vigorous, competent and adequate defense.
We find the remaining assignments of error to be without merit.
The findings of guilty and the sentence are affirmed.
Senior Judge SU-BROWN and Judge YAWN concur.

. Paragraph 5-8, Army Regulation 27-10 (1982) (superseded 1984), makes the Model Code of Professional Responsibility applicable to Army lawyers involved in courts-martial proceedings.

. The characterization of a staff judge advocate’s office as a firm is particularly inappropriate when used to describe the association between trial counsel and other lawyers in that office. In addition to the lack of economic ties, a functional separation exists between a judge advocate serving as a trial counsel and judge advocates in other sections of the staff judge advocate’s office. This separation is manifested in Article 6(c), Uniform Code of Military Justice, 10 U.S.C. § 806 (1982), which provides:
No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case.
See also United States v. Johnson, 4 M.J. 8, 9 (CMA 1977) (Cook, J., concurring) (no functional unity between a staff judge advocate and a trial counsel).