898

UNITED STATES

v.

**Victor W. BRUNSON, Seaman Recruit, U.S. Coast Guard.**

CGCM 9962
Docket No. 840.

U. S. Coast Guard Court of
Military Review.

24 Nov. 1982.

Military Judge: CDR Andrew T. HORSEY, USCG.

Trial Counsel: LT Bernard J. ROAN, USCG.

Defense Counsel: LT James B. COVINGTON, USCGR.

Appellate Defense Counsel: LT Dana J. ST. JAMES, USCGR.

Appellate Government Counsel: LT Christena G. GREEN, USCGR.

OPINION

MORGAN, Chief Judge:

Seaman Recruit Victor W. BRUNSON, USCG, was tried by a general court-martial comprised of a military judge and members at Governors Island, New York, 21–27 June 1981. The accused pleaded not guilty to specifications alleging, respectively, the possession of sixteen foil packets containing cocaine on 30 March 1981 and the sale of two packets containing cocaine on 30 March 1981 in violation of Coast Guard Regulations and Article 92, Uniform Code of Military Justice, 10 U.S.C. 892. The court acquitted the accused of the specification alleging possession of cocaine but convicted him of the specification alleging the sale of cocaine and sentenced him to be confined at hard labor for eighteen months, to forfeit all pay and allowances and to be discharged from the service with a bad conduct discharge. The convening authority approved the findings of guilty and only so much of the sentence as provided for confinement at hard labor for ten months, forfeiture of all pay and allowances, and discharge from the service with a bad conduct discharge.

Appellate defense counsel has submitted several assignments of error for our consideration. Since a presumption that the appellant's rights were prejudiced by the extrajudicial activities of the Article 32, UCMJ, investigating officer requires reversal, only that issue will be considered.

In March 1981 the Third Coast Guard District Office of Intelligence (oil) was investigating drug related activities at Coast Guard Support Center and other units on Governors Island. Confidential informants were being utilized and controlled purchases of drugs were being arranged. Lieutenant Commander MATHEWS, the senior assistant to the Third District Legal Officer, was responsible for providing legal advice and services to the (oil) agents and to the Commanding Officer and other representatives of Support Center. He had designated Lieutenants DONLON and ROAN of the district legal office to provide assistance to the (oil) agents and to the representatives

of the Support Center. Lieutenant Commander MATHEWS talked with Lieutenants DONLON and ROAN from time to time and was generally familiar with developments in the investigation.

As the investigation progressed, Lieutenant ROAN provided instruction to the Commanding Officer, Support Center and his representatives respecting the issuance of search authorizations. Lieutenant DONLON advised and assisted the (oil) agents in establishing probable cause to support an application for a command authorization to search. The search authorization procedure was considerably complicated by the absence of the Support Center Commanding Officer and by the perceived disqualification of the Executive Officer, acting as commanding officer, due to his active involvement in the investigation. As a result, the Acting Commanding Officer designated a subordinate officer to act upon any requests for command authorization to search.

The (oil) investigation culminated 30 March 1981 when Seaman Recruit BRUNSON and others were apprehended and searched pursuant to a command search authorization following a controlled buy of marijuana and cocaine in the barracks by an (oil) informant. While in the room the informant also saw other marijuana and what appeared to be "speed".

In early April 1981 the Commander, Third Coast Guard District decided to order Article 32, UCMJ, investigations of the charges against Seaman Recruit BRUNSON and at least four other accused with a view to trial by general courts-martial. The district legal officer and Lieutenant Commander MATHEWS discussed the availability of a law specialist to serve as investigating officer. Lieutenant Commander MATHEWS volunteered to serve but the district legal officer rejected the offer because he was "too close to the case". Ultimately, it was decided that Lieutenant Commander STEVENSON, a law specialist serving on the staff of the Commander, Atlantic Area, U.S. Coast Guard, at Governors Island, was the best choice because of his availability and prior experience in the district legal office. Lieutenant Commander STEVENSON was appointed in due course to conduct the investigations.

Prior to convening the investigations Lieutenant Commander STEVENSON discussed administrative and procedural aspects of the investigations with Lieutenant Commander MATHEWS and Lieutenant ROAN. The latter officer had been designated to serve as counsel for the government at the investigations and was being groomed to serve as trial counsel in any subsequent trials, a function which he performed in Seaman Recruit BRUNSON's case. Lieutenant Commander STEVENSON was informed by Lieutenant Commander MATHEWS and Lieutenant ROAN that the cases were related. He discussed with Lieutenant Commander MATHEWS the question of whether the cases should be investigated simultaneously as one investigation or whether there should be a separate and distinct investigation as to each accused. Ultimately, Lieutenant Commander STEVENSON decided to combine the investigations insofar as possible.

The combined investigation convened 5 May 1981 with five accused and their separate counsel present. Lieutenant ROAN performed essentially as trial counsel during the investigations. He arranged for the presence of the accused and their counsel at the various sessions. He determined which witnesses would be called for the government, arranged for their appearance, and conducted direct examination. Lieutenant Commander STEVENSON called no witnesses on his own motion and asked few, if any, questions. Lieutenant ROAN expressed the government's position on contested issues. He volunteered legal advice to Lieutenant Commander STEVENSON and his advice was occasionally requested during open sessions of the investigation. Lieutenant Commander STEVENSON and Lieutenant ROAN also engaged in an unspecified number of ex parte discussions of the cases without notice to the accused or their counsel. The import of those discussions is not reflected in the record.

Lieutenant Commander STEVENSON also had numerous ex parte conversations with Lieutenant Commander MATHEWS about the cases. Lieutenant Commander MATHEWS placed the number of such discussions at 20–35. Here again, the subject matter of the great majority of those conversations is not identified in the record. However, the testimony of Lieutenant Commander STEVENSON and Lieutenant Commander MATHEWS, while vague, does reveal that both procedural and substantive issues were discussed. For example, the procedural question of whether the investigation of the cases should be combined or each conducted independently was discussed with Lieutenant Commander MATHEWS stating a preference for separate investigations but Lieutenant Commander STEVENSON opting to combine them. Among the substantive issues discussed were the questions of whether the identity of confidential informants should be disclosed and whether the government counsel, Lieutenant ROAN, could be called as a witness by the defense. Lieutenant ROAN's testimony was sought in connection with a speedy trial issue being pursued by Seaman Recruit BRUNSON's defense counsel.

Lieutenant Commander MATHEWS did some research on the question of disclosing the identity of confidential informants and also asked Lieutenant DONLON to research the issue. He did not recall what advice, if any, he ultimately gave Lieutenant Commander STEVENSON, but if he advised him at all he would have advised that the identity of confidential informants should not be disclosed at that stage of the proceedings. The defense counsel's request that any confidential informants be identified was denied by the investigating officer.

Lieutenant Commander MATHEWS advised Lieutenant Commander STEVENSON that Lieutenant ROAN could be called as a witness by the defense. After receiving that advice and discussing the issue further, the investigating officer informed counsel for Seaman Recruit BRUNSON that a statement of expected testimony establishing the limits of counsel's subsequent examination would be required as a pre-condition to calling Lieutenant ROAN as a witness. Lieutenant Commander MATHEWS had agreed with this requirement. This novel conditional offer, without precedent known to us, was made to counsel by telephone after the investigation had closed on the final day that witnesses were heard in Seaman Recruit BRUNSON's case. Counsel refused to be limited in his right to examine the requested witness on all matters pertinent to the investigation. Consequently, Lieutenant ROAN was not called as a witness.

The standards of conduct required of an Article 32, UCMJ, investigating officer and the limitations upon his right to engage in private conversations with government counsel or others about the case under investigation were discussed extensively and clear guidelines were established by the Court of Military Appeals in *U.S. v. Payne*, 3 M.J. 354 (C.M.A.1977).

The charges against Specialist Five PAYNE were investigated by a Major of the same name, PAYNE, an officer not trained in the law. Major RUNKE, a lawyer in the staff judge advocate's office not serving in any prosecutorial capacity, was made available to advise Major PAYNE on questions which might arise during the course of the investigation. Instead of seeking advice from Major RUNKE, Major PAYNE chose to confer with Captain GRAVELLE, counsel for the government and ultimately trial counsel, on seven occasions concerning various facets of the investigation. These ex parte consultations related to both procedural and substantive aspects of the investigation. Among the substantive issues discussed were the applicable burden of proof, evidentiary standards and the legality of a search which produced the incriminating evidence against Specialist Five PAYNE. Major PAYNE explained that he chose to continue conferring with Captain GRAVELLE because he felt the Captain was more familiar with the case and would not have to read the case file or perform other introductory work in order to be able to give advice.

The Court of Military Appeals repeated its assertion, made frequently over the years, that the Article 32 investigating officer performs a judicial function and must be viewed as a judicial officer. See *U.S. v. Samuels,* 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959); *U.S. v. Payne,* supra at 3 M.J. 356. In that capacity he is subject to the provisions of the American Bar Association Standards Relating to the Administration of Criminal Justice, particularly the ABA Standards Relating to the Function of the Trial Judge, § 1.6 (1972) providing:

> "The trial judge should insist that neither the prosecutor nor the defense counsel nor any other person discuss a pending case with him ex parte, except after adequate notice to all other parties and when authorized by law or in accordance with approved practice."

The Court concluded that in view of the matters discussed and the ex parte nature of the conversations between Major PAYNE and Captain GRAVELLE the standards of neutrality, detachment and independence required by Article 32 and by the ABA Code of Judicial Conduct had been violated so as to render the Article 32 investigation defective.

Having concluded that Major PAYNE had violated the applicable standards for the judicial office he served, the Court then proceeded to determine whether the investigating officer's impropriety had prejudiced Specialist Five PAYNE's rights. The Court recognized "the inherent difficulties presented by requiring a defendant to demonstrate the prejudice resulting from improper actions of a judicial officer, the full extent or text of which he may be unaware in part or whole". The Court concluded that the matter was one requiring a presumption of prejudice so as to make reversal obligatory in the absence of clear and convincing evidence to the contrary.

The Court of Military Appeals examined the record of Specialist Five PAYNE's case under the presumption that he had been prejudiced through the improper actions of the Article 32 investigating officer. Based on that examination, the Court concluded that the presumption had been overcome through the testimony of Major PAYNE at trial and other matters presented by the government. Among the other matters presented by the government were Major PAYNE's notes setting forth the full text of matters he had discussed with Captain GRAVELLE. 3 M.J. at 357, and Appendix I.

During oral argument of Seaman Recruit BRUNSON's case government counsel very properly conceded that Lieutenant Commander STEVENSON's repeated ex parte discussions of matters related to the case with Lieutenant Commander MATHEWS and Lieutenant ROAN triggered the presumption of prejudice established by the Court in *U.S. v. Payne.* Thus, the only question remaining for our resolution is whether the presumed prejudice has been overcome by clear and convincing evidence.

The testimony of Lieutenant Commanders STEVENSON and MATHEWS leaves much uncertainty as to the subject matter of their numerous discussions, the advice given by Lieutenant Commander MATHEWS or the extent to which the investigating officer may have been influenced by that advice.

The nature and number of the ex parte discussions between Lieutenant Commander STEVENSON and Lieutenant ROAN is wholly unreported in the record. Trial defense counsel requested that the investigating officer place all ex parte conversations between him and government counsel in the Report of Investigation. The investigating officer declined to do so but stated that he informed defense counsel of all such conversations. Even the information provided to defense counsel has not been recorded for our evaluation. Clearly, this record does not contain the clear and convincing evidence necessary to overcome the presumption that the appellant's rights were prejudiced by the Article 32 investigating officer's improper actions.

The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges HOLLAND, VERSAW and BRIDGMAN concur.