**UNITED STATES of America, Plaintiff,**

v.

**Gary John EKLUND, Defendant.**

**Crim. No. 82–77.**

United States District Court,
S.D. Iowa.

Nov. 29, 1982.

Joseph Beck, Asst. U.S. Atty., Des Moines, Iowa, for plaintiff.

Mark W. Bennett, Des Moines, Iowa, for defendant.

## MEMORANDUM OPINION

VIETOR, District Judge.

Defendant has been found guilty by a jury of the offense of willfully failing to register with the Selective Service System in violation of 50 U.S.C.App. §§ 453(a) and 462(a).[1] He is scheduled to be sentenced December 2, 1982.

On October 15, 1982, the court entered oral rulings in open court on numerous defense motions, and in the instructions to the jury on October 27 the court made further determinations of contested legal issues. This memorandum opinion articulates the court's reasoning in respect to two of the more seriously contested issues: (1) whether defendant is the victim of impermissible selective prosecution, an issue he raised by motion to dismiss; and (2) whether the offense charged is a continuing offense, an issue defendant raised by motion to dismiss, requested instructions and objections to the court's instructions. The court ruled that defendant is not the victim of impermissible selective prosecution and that the offense charged is a continuing one.

## SELECTIVE PROSECUTION

### Facts

In July of 1980, when the Selective Service System registration requirement went

---

1. § 453. Registration

       *     *     *     *     *     *

(a) [I]t shall be the duty of every male citizen of the United States * * * who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

§ 462. Offenses and penalties

(a) * * * any other person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451 to 471a of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty * * * or who otherwise evades or refuses registration * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title [said

sections], or rules, regulations, or directions made pursuant to this title [said sections] * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished * * *.

Pursuant to section 453 on July 2, 1980, President Carter issued Proclamation No. 4771 providing in part:

1-1. *Persons to be Registered and Days of Registration.*

1-101. Male citizens of the United States and other males residing in the United States, unless exempted by the Military Selective Service Act, as amended, who were born on or after January 1, 1960, and who have attained their eighteenth birthday, shall present themselves for registration in the manner and at the time and places as hereinafter provided.

1-102. Persons born in calendar year 1960 shall present themselves for registration on any of the six days beginning Monday, July 21, 1980. [Defendant was born in 1960.]

into effect, defendant participated in a public demonstration against registration at the United States Post Office in Des Moines. He spoke at the demonstration, stating that he would not register. News reporters were present and his remarks were quoted in a *Des Moines Register* news story about the demonstration.

In January of 1981 defendant wrote to the Selective Service System expressing his opposition to involuntary military service. He stated: "Last July I did not sign up for future involuntary induction (into the military) as the law required and I will not do so in the future." He went on to volunteer "to be the first [prosecuted for non-registration]."

In June of 1981 defendant received from the Selective Service System a letter fully advising him of the provisions of the registration requirement, including the criminal penalties for non-registration. A registration form was enclosed. The letter stated in the concluding paragraph: "Let me stress that unless we hear from you within 15 days of the date of this letter we will send your name to the Department of Justice for investigation and possible prosecution."

In October of 1981 the defendant received from the United States Attorney for the Southern District of Iowa a letter similar to the June letter, granting him ten days to register. A registration form was enclosed.

On August 24, 1982, an FBI agent personally delivered another letter, written by an Assistant United States Attorney for the Southern District of Iowa and similar to the prior letters, to defendant at his father's residence in Davenport. Enclosed with the letter was a registration form. The letter did not fix a deadline. Defendant was also given a booklet concerning registration. Defendant told the FBI agent that he had not registered and did not plan to register.

Defendant was indicted on August 31.

On July 28, 1982, the Selective Service System Director estimated before a subcommittee of the House Judiciary Committee that there are about 674,000 non-registrants out of a potential registrant population of 9,039,000. He opined that only a relatively small number of non-registrants have "knowingly" neglected to register.

The Selective Service System's enforcement program is "passive." Non-registrants are brought to the Service's attention only when they report themselves (as defendant did) or when others report them. The identities of non-registrants are not actively sought.

The Selective Service System expects to soon implement an "active" enforcement program based on access to Social Security records.[2] Selective Service System officials expect that the "active" enforcement program will result in referral to the Justice Department of massive numbers of non-registrants and that selection of persons to be prosecuted will probably be based on a random system.

Under the "passive" system, which yielded defendant's name when he wrote Selective Service in January of 1981, a name acquired is passed on to the Justice Department after the individual is sent the letter that defendant received in June of 1981. In describing the "passive" system's operational experience, the Director of the Selective Service System told a subcommittee of the House Judiciary Committee on July 28, 1982:

Since mid–1980, we have received the names of about 1,000 potential violators;

---

2. On December 1, 1981, 50 U.S.C.App. § 462 was amended to add subsection (e), which states:

The President may require the Secretary of Health and Human Services to furnish to the Director, from records available to the Secretary, the following information with respect to individuals who are members of any group of individuals required by a proclamation of the President under section 3 [section 453 of this Appendix] to present themselves for and submit to registration under such section: name, date of birth, social security account number, and address. Information furnished to the Director by the Secretary under this subsection shall be used only for the purpose of the enforcement of this Act.

some of these are self-admitted; that is, they are individuals who have written or called Selective Service and stated their intention to refuse to register. The other names were submitted to us by parents, neighbors and other concerned citizens. We receive about ten additional names each week. In processing these names we check our registration files, correspond with the man and analyze all responses. As a result we have identified 225 probable violators from this list and have forwarded these names to the Department of Justice for investigation and/or prosecution. This effort is continuous and will result in additional referrals in the near future.

The Justice Department prosecution policy, as set forth in a July 9, 1982, communication to United States Attorneys from the Justice Department

requires that United States Attorneys notify non-registrants by registered mail that, unless they register within a specified time, prosecutions will be considered. In most instances we anticipate that Federal Bureau of Investigation agents will also interview alleged non-registrants prior to the initiation of prosecutions. Nevertheless, if a non-registrant registers prior to indictment, no further prosecutive action will be taken.

The policy is designed to ensure that (1) the refusal to register is willful and (2) only persons who are the most adamant in their refusal to register will be prosecuted.

The Justice Department sent to the United States Attorney for the Southern District of Iowa names of possible violators believed to be living in the district. Of the names sent, two registered, one proved to be a woman not subject to registration, and others had moved out of the district. Defendant is the only one who could be prosecuted. The only names evaluated by the United States Attorney for the Southern District of Iowa for possible prosecution for non-registration were those referred by the Justice Department.

The first indictments for failure to register under President Carter's Proclamation No. 4771 came last summer after a lengthy grace period. Defendant was among the first eight persons indicted.

*Law Governing Selective Prosecution*

■ The due process clause of the Fifth Amendment prohibits the federal government from denying to any person within its jurisdiction the equal protection of the laws. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

In *United States v. Falk,* 479 F.2d 616, 618 (7th Cir.1973), the court stated:

The promise of equal protection of the laws is not limited to the enactment of fair and impartial legislation, but necessarily extends to the application of these laws. The basic principle was stated long ago in *Yick Wo v. Hopkins,* 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886):

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

However, mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962).

The United States Court of Appeals for this circuit articulated the burden on a defendant alleging unconstitutional selective prosecution in *United States v. Catlett,* 584 F.2d 864, 866 (8th Cir.1978):

To establish the essential elements of a *prima facie* case of selective discrimination, a defendant must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted. Second, the defendant must demonstrate

that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his first amendment right to free speech. *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974). We approved of this two-pronged test of "intentional and purposeful discrimination" in *United States v. Swanson,* 509 F.2d 1205, 1208–09 (8th Cir. 1975). *See also United States v. Ojala, supra,* 544 F.2d [940] at 943.

### Discussion

The thrust of defendant's position is that the government's "passive" enforcement system operates to identify and prosecute only those non-registrants who exercised their First Amendment right to speak out in opposition to the draft registration law, and therefore the prosecutions of defendant and the few others who have been prosecuted to date are impermissibly based on their exercise of the First Amendment right to free speech. Defendant established that he was singled out for prosecution while others similarly situated (most other willful non-registrants who could be identified by an "active" enforcement program) have not been prosecuted. However, defendant did not establish the second essential element of selective prosecution—that his selection for prosecution was based on an impermissible ground.

■ Although the government's "passive" enforcement system may pick up names of some individuals who have exercised their First Amendment right to free speech by publicly speaking out against the draft registration law, there is no showing that the selection of these people for prosecution was *based upon* their exercise of the First Amendment right to free speech. Defendant has not demonstrated that he is being prosecuted *because* he has expressed his opposition to the draft registration law. The undisputed evidence shows that defendant is being prosecuted because he purposely identified himself to the Selective Service System as a non-registrant and has persisted in refusing to register by reject-ing repeated opportunities to register that were offered to him by the government. There is no showing that people who have publicly expressed their opposition to the draft registration law, but who have not identified themselves or been identified by others to the Selective Service System as non-registrants, are being prosecuted for non-registration or for any other crime. One may publicly speak out against the law without identifying himself as a violator, indeed without even being a violator, and one may identify himself to Selective Service as a violator without publicly speaking out against the law.

Defendant misinterprets the statement in the Justice Department's July 9, 1982, communication to United States Attorneys that "[t]he policy is designed to ensure that * * 2) only persons who are the most adamant in their refusal to register will be prosecuted" to mean that the policy is designed to prosecute only those who publicly express opposition to the law. That is not what is meant. What is clearly meant, as reference to the preceding paragraph of the communication shows, is that only those who persist in not registering after personally being given every opportunity to do so will be prosecuted. (See pertinent text of the communication at page 5 of this memorandum opinion.)

If the government's prosecution program consisted of actively seeking out and prosecuting only those who had publicly spoken out against the registration law, the selective prosecution defense might have merit. However, that is not the government's policy. The policy is to prosecute those willful non-registrants whose names are supplied to the Selective Service System by the non-registrants themselves or other members of the public and who persist in refusing to register after being given repeated government invitations to do so. These persons are prosecuted whether or not they have made public speeches against the registration law. Those who did make such speeches did not thereby gain immunity from prosecution.

The selective prosecution issue in the current draft registration cases has not yet been addressed by federal appellate courts. The weight of district court authority supports this court's conclusion. *United States v. Martin,* No. CR 82–2005 (N.D.Iowa Nov. 19, 1982) (order); *United States v. Sasway,* No. 82–8504–GT (S.D.Cal. Aug. 19, 1982) (order); *United States v. Schmucker,* No. 82–133A (N.D.Ohio 1982). *Contra United States v. Wayte,* No. CR 82–630–TJH (C.D. Cal. Nov. 15, 1982) (order and opinion).

## CONTINUING OFFENSE [3]

In 1970, the United States Supreme Court held in *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970), that the offense of failing to register was not a continuing offense, and that therefore the statute of limitations began to run when the offense was completed by defendant's failure to register during the six days designated in the President's proclamation. The limitations statute then in effect was the regular five year statute, 18 U.S.C. § 3282. Defendant's conviction was reversed because the statute had run.

A year later, in direct response to the *Toussie* decision, the Congress enacted Public Law 92–129, now codified as subsection (d) of 50 U.S.C.App. § 462, a statute of limitations provision that is applicable only to failure to register violations. This law provides:

> No person shall be prosecuted, tried, or punished for evading, neglecting, or refusing to perform the duty of registering imposed by section 3 of this title [section 453 of this Appendix] unless the indictment is found within five years next after the last day before such person attains the age of twenty-six, or within five years next after the last day before such person does perform his duty to register, whichever shall first occur.

For the following reasons, it is this court's opinion that subsection (d) of section 462 imposes a continuing duty to register until age 26 and makes the offense a continuing one.

The language of the statute expressly recognizes that one who failed to register during the days designated in the presidential proclamation may "perform his *duty* to register" (emphasis supplied) at a later date. The statute also fixes the duration of the limitations at five years and provides that the five year period does not begin to run until the non-registrant reaches age 26 or registers, whichever occurs first.

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States, supra,* 397 U.S. at 114, 90 S.Ct. at 860. Normally a statute of limitations begins to run from the time the crime is complete, *Pendergast v. United States,* 317 U.S. 412, 418, 63 S.Ct. 268, 270, 87 L.Ed. 368 (1943), but if the crime is a continuing one the statute does not begin to run until the continuous commitment of the crime ceases. *Toussie v. United States, supra,* 397 U.S. at 114, 90 S.Ct. at 860 ("If the offense is a continuing one the prosecution was timely * * *."). Thus it appears that the express statutory language of section 462(d) is consistent only with the continuing offense concept.

The legislative history of section 462(d) offers support for the view that Congress intended the statute to establish the offense as continuing. House Report No. 92–82, 92d Cong. 1st Sess. 17 (1971), reflects the following comments:

> Clause 23 of Section 1 of the bill amends Section 12 of the Military Selective Service Act by adding a new Subsection (d) extending the period *before which the Statute of Limitations begins to run* in order to permit prosecution of

**3.** The continuing offense issue arose in the context of the government's burden of proving all elements of the crime. If the offense were not continuing, the government would have had to prove that all elements, including knowledge on the part of defendant of his duty to register, existed during the six-day period in July of 1980. *See* n. 1, *supra.* Under the court's holding that the offense is a continuing one, the government was permitted to prove existence of all the elements at any point in time from July 1980 until indictment in August of 1982.

draft evaders until the age of 31. The new Subsection will overcome the results of the decision in *Toussie v. United States,* 90 S.Ct. 858 (1970). The opinion in that case interpreted the act to limit the time for prosecuting a man who failed to register to five years and five days after a man's 18th birthday. [Emphasis supplied.]

The language added here provides that the Statute of Limitations *does not begin to run* until the last day before the date on which a man registers or on the date on which he attained age 26, whichever occurs first. For. a non-registrant this will allow prosecution for five years after his 26th birthday. This change is appropriate not only as a device to *emphasize the continuing requirement of registration but also as a reflection of equity to those men who comply with the registration requirements and remain liable until age 26.* [Emphasis added.]

As for case law precedent, at least two other district courts have held that the offense is continuing. *United States v. Sasway, supra; United States v. Schmucker, supra* (jury instructions). *Contra United States v. Martin, supra.* Appellate courts have not yet directly ruled on the issue, but the United States Court of Appeals for the Third Circuit, in dictum, stated:

Furthermore, the congressional action in amending the statute to reverse the effect of *Toussie, see* 50 U.S.C.App. § 462(d) (Supp.1973), is a strong indication that the legislative intent was indeed to impose a continuing duty.

\*   \*   \*   \*   \*   \*

\* \* \* The doctrine of continuing offense is not one foreign to our law and is not one we should hesitate to apply when congressional policy and the obvious necessity of making men available for military service on a continuing basis are fully consistent with such an interpretation.

*United States v. Robinson,* 485 F.2d 1157, 1163 (3d Cir.1973).

Finally, a constitutional consideration strongly favors construing section 462(d) as imposing a continuing duty to register until age 26 and making the offense a continuing one. It is a fundamental principle of statutory construction that if a statute is susceptible to two interpretations and one is of doubtful constitutionality, the other must prevail. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *CSC v. Letter Carriers,* 413 U.S. 548, 571, 93 S.Ct. 2880, 2893, 37 L.Ed.2d 796 (1973); *United States v. Vuitch,* 402 U.S. 62, 70, 91 S.Ct. 1294, 1298, 28 L.Ed.2d 601 (1971); *Turchick v. United States,* 561 F.2d 719, 723 (8th Cir.1977); *Tollett v. United States,* 485 F.2d 1087, 1098 (8th Cir.1973). The construction urged by defendant, that section 462(d) merely changes the duration of the statute of limitations but does not make the offense a continuing one, appears to offend the right of equal protection of the laws inherent in the due process clause of the Fifth Amendment. *See Bolling v. Sharpe, supra.*

If section 462(d) were not construed to make the offense of failing to register a continuing offense, it would impose a limitation of different durations for different people, the duration for each person depending on his date of birth. President Carter's Proclamation No. 4771 required those born in 1960 to register from July 21 through July 26, 1980, inclusive; those born in 1961 to register from July 28 through. August 2, 1980, inclusive; those born in 1962 to register from January 5 through January 10, 1981, inclusive; and those born on or after January 1, 1963, to register from 30 days before to 30 days after their eighteenth birthday. For each offender the statute would begin to run the day after his prescribed registration period ended and, unless he tardily registered, would expire when he reaches age 31. The statute's length would vary among offenders, the length for each depending on his birth date. For those born in 1960 the length would vary from 10 years, 5 months and 5 days to 11 years, 5 months and 4 days. For those born in 1961 the length would vary from 11 years, 4 months and 29 days to 12 years, 4 months and 28 days. For those born in 1962 the length would vary from 11 years, 11 months and 21 days to 12 years, 11

months and 20 days. For those born on or after January 1, 1963, the length would be 12 years and 11 months. The total range is from 10 years, 5 months and 5 days (born 1–1–60) to 12 years, 11 months and 20 days (born 12–31–62). Any offender who tardily registered would have a statute of limitations length of 5 years plus whatever length of time lapsed from the day the statute began to run until the day he registered.

This court cannot identify any rational basis that would sustain such variations in the duration of the limitations against an equal protection challenge. If, however, section 462(d) is construed to impose a continuing duty to register until age 26, thus making the offense a continuing one, there is no constitutional problem. So construed, section 462(d) is simply a five year statute of limitations that begins to run when the offense ceases by attaining age 26 or registering, and its duration is uniformly applicable to all offenders.

By enacting subsection (d) of section 462, Congress intended to and did make the offense of failing to register a continuing one.