UNITED STATES

v.

Richard T. TATUM, Subsistence Specialist Third Class, U.S. Coast Guard.

CGCM 9965.
Docket No. 843.

U.S. Coast Guard Court of Military Review.

11 Jan. 1984.

Trial Counsel: LT Bernard J. ROAN, USCG.

Defense Counsel: LCDR Thomas F. MURPHY, USCGR.

Appellate Defense Counsel: LT Dana J. ST. JAMES, USCGR.

Appellate Government Counsel: LT Christina G. GREEN, USCGR.

## DECISION

MORGAN, Chief Judge:

Subsistence Specialist Third Class Richard T. Tatum, USCG, was tried by a general court-martial convened by the Commander, Third Coast Guard District on 28 September to 2 October 1981. At Petty Officer Tatum's request, he was tried by the military judge alone.

The accused pleaded not guilty to a Charge and an Additional Charge with a combined total of eight specifications thereunder alleging possession, use and sale of marijuana in violation of Coast Guard Regulations and Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The military judge found the accused guilty of the charge and six specifications thereunder alleging possession, use and sale of marijuana and acquitted him of the remaining charge and specifications. Prior to sentencing, the military judge also vacated the findings of guilty of two of the specifications due to multiplicity. The judge then sentenced the accused to be confined at hard labor for two years, to be reduced to pay grade E–1, to forfeit all pay and allowances and to be discharged from the service with a bad conduct discharge. The findings

of guilty and only so much of the sentence as provided for confinement at hard labor for twelve months, reduction to pay grade E–1, forfeiture of all pay and allowances and bad conduct discharge were approved by the convening authority.

Appellate Defense Counsel has filed assignments of error alleging that the Article 32, UCMJ, Investigation of the charges was defective and incomplete; that the accused was deprived of representation by civilian counsel due to the government's wrongful withholding of more than $445.00 seized from the accused; that the military judge erroneously denied a defense motion to suppress evidence seized without proper authorization; that the accused was denied equal protection of the law by reference of his case for trial by general court-martial because of his race; that the charge and specifications of which the accused stands convicted failed to state offenses since the regulation allegedly violated is not punitive; and, that sentence reassessment is required to credit the accused for illegal pretrial confinement served.

The charges against Petty Officer Tatum were investigated pursuant to Article 32, UCMJ, in common with charges against five other accused. One officer was appointed to conduct the six investigations. An attorney was detailed to represent the government and counsel was detailed to represent each accused. The charges against the accused were investigated over the period 5 May 1981 to 17 June 1981.

A letter of 5 May 1981 from counsel for Petty Officer Tatum to Commander, Third Coast Guard District, the authority who ordered the investigation of charges, requested that a reporter be appointed to record and prepare a verbatim transcript of the investigation. This request was not granted. In the remarks section of his report the investigating officer stated that the defense counsel requested a new Article 32 investigation because four witnesses had not been admonished not to discuss their testimony and had, in fact, discussed portions of their testimony with other witnesses. The investigating officer found no prej-

udice to the accused from the discussions. The investigating officer also reported that the defense counsel had requested that the investigating officer place all *ex parte* discussions between himself and the government counsel on the record. The investigating officer stated that he informed counsel and the accused of all such conversations but declined to place them in the record.

At trial, the defense counsel again challenged the adequacy of the Article 32, UCMJ, investigation due to the failure of the appointing authority or the investigating officer to provide a court reporter and a verbatim transcript of the proceedings and for failure of the investigating officer to instruct witnesses not to communicate with other witnesses concerning the matters under investigation. The military judge denied the defense motions for dismissal of the charges or for a new Article 32 investigation. Defense counsel did not again raise the question of *ex parte* discussions between the investigating officer and government counsel. Nevertheless, appellate defense counsel contends that the issue was effectively raised by trial defense counsel's challenge to the adequacy of the summarized report of investigation so that we should note the litigation of the issue in *U.S. v. Brunson*, 15 M.J. 898 (C.G.C.M.R. 1982) affirmed USCMA No. 45247/CG, 6 December 1983, and follow our decision in that case.

In *U.S. v. Brunson* the issue respecting the Article 32, UCMJ, investigating officer's *ex parte* discussions of the case with government counsel and the senior assistant to the district legal officer was explicitly raised at trial and the investigating officer and other witnesses were called to testify on the matter. The evidence developed in the record persuaded us that prejudice to *Brunson's* rights must be presumed under the doctrine announced by the Court of Military Appeals in *U.S. v. Payne*, 3 M.J. 354 (C.M.A.1977). Based upon our evaluation of that evidence we concluded that the government had failed to overcome the presumption of prejudice to *Brunson's* rights so that our interpretation of *Payne* required reversal.

Only the presumption of prejudice rather than actual prejudice was found in *Brunson*. Thus, had the issue not been raised at trial it would have been waived. See Paragraphs 67b and 69a, Manual for Courts-Martial, 1969 (Rev.); *U.S. v. Mickel*, 9 U.S. C.M.A. 324, 26 C.M.R. 104 (1958); *U.S. v. Chuculate*, 5 M.J. 143 (C.M.A.1978). As the Court of Military Appeals said in *Mickel* at 9 U.S.C.M.A. 327, 26 C.M.R. 107 and repeated in *Chuculate* at 5 M.J. 144–145:

> "Thus, if an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. At that stage of the proceedings, he is perhaps the best judge of the benefits he can obtain from the pretrial right. Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at trial; the rights accorded the accused in the pretrial stage merge into his rights at trial. If there is no timely objection to the pretrial proceedings or no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction."

In *U.S. v. Brunson, supra,* the accused made timely objection that he had been deprived of a substantial pretrial right to have the officer investigating charges against him comply with applicable judicial standards. The Court of Military Appeals had attached a presumption of prejudice to the denial of that right in *U.S. v. Payne, supra.* The government failed to overcome the presumption so that *Brunson* remained entitled to the judicial enforcement of his pretrial right without regard to whether enforcement of the right would benefit him at the trial.

■ In appellant's case there was no timely objection at trial to the *ex parte* discussions between the investigating officer and government representatives during the pretrial proceedings and there is no indication that appellant's rights were adversely affected at trial by those discus-

sions. Nothing in either the *Brunson* record or in the record of appellant's case would compel the conclusion that the government could not have sustained its burden to overcome the presumption of prejudice from the unexplained *ex parte* discussions. Indeed, we specifically noted in *Brunson* that the testimony of the investigating officer and the principal assistant to the district legal officer was not sufficiently developed on the record to dispel the uncertainty as to the subject matter of their numerous discussions, the advice given or the extent to which the investigating officer may have been influenced by that advice. We also noted that the nature and number of the *ex parte* discussions between the investigating officer and government counsel were wholly unreported in the record.

It may well be that the investigating officer's revelations of his *ex parte* discussions to defense counsel effectively dispelled any possibility of prejudice to the appellant's rights. In any event, the appellant was at that stage of the proceedings perhaps the best judge of the benefits he could obtain from insisting upon his pretrial right to have the officer investigating the charges against him comply with applicable judicial standards. See *U.S. v. Mickel, supra.* He was obviously aware of that right since the issue had been raised before the investigating officer. That he did not reassert the right at trial indicates his knowing decision to forego it.

We have examined the record for any suggestion that defense counsel may have been remiss in his professional responsibility by failing to insist at trial that appellant be accorded his pretrial right and find none. See *U.S. v. Walker,* 21 U.S.C.M.A. 376, 45 C.M.R. 150 (1972); *U.S. v. Rivas,* 3 M.J. 282 (C.M.A.1977). In the absence of timely objection at trial or an apparent miscarriage of justice, we are unwilling to notice the error in the pretrial proceedings and consider it to have been waived. See *U.S. v. Cruz,* 5 M.J. 286 (C.M.A.1978); *U.S. v. Joseph,* 11 M.J. 333 (C.M.A.1981).

Part of the marijuana which the accused was convicted of possessing was seized from him in the Bachelor Enlisted Quarters at Coast Guard Support Center, New York on 30 March 1981. The search was based upon probable cause and was authorized by a subordinate officer of the Acting Commanding Officer of the Support Center to whom the authority to authorize the search had been delegated. Appellant contends that the officer authorizing the search lacked the requisite impartiality so that the military judge erred at trial in admitting the seized evidence over objection.

The challenge to the impartiality of the officer authorizing the search is not supported by any evidence of his impartiality or of his direct involvement in the planning or conduct of the search. Rather it is based on evidence of his inexperience in authorizing searches, his receipt of advice on authorizing searches from lawyers representing the government, the fact that he was in voice communications with the agents conducting the search and his position as a subordinate to the Acting Commanding Officer who was disqualified due to his prior involvement in the investigation.

■ In hindsight, the appearance of detachment and impartiality unquestionably would have been improved had the authorization to search been obtained from a military judge or from a superior commander. But appearance is not determinative of the issue of impartiality. Evaluation of the evidence in this record convinces us that the officer authorizing the search was sufficiently neutral and detached that he was able to and did perform his magisterial functions in an impartial and judicial manner. See *U.S. v. Ezell,* 6 M.J. 307 (C.M.A. 1979); *U.S. v. Stuckey,* 10 M.J. 347 (C.M.A. 1981).

■ Delegation of the commander's authority to authorize a search would be invalid under the decision of the Court of Military Appeals in *U.S. v. Kalscheuer,* 11 M.J. 373 (C.M.A.1981). However, the Court expressly limited the application of *Kalscheuer* to searches conducted after issuance of the mandate in that case. Thus,

the search of appellant's person and property before the effective date of *Kalscheuer* was not affected by that decision. We find that the search was reasonable and lawful and that the military judge did not err in denying the motion to suppress the fruits of the search.

The Coast Guard Intelligence investigation of appellant's drug involvement also produced evidence supporting charges against five other suspects. The charges against the six accused were investigated in common by a single investigating officer pursuant to Article 32, UCMJ. Three of the accused were black and three were white. Eventually, the cases of the three black accused were referred for trial by general courts-martial. The case of one white accused was disposed of at mast pursuant to Article 15, UCMJ, and the cases of the other two white accused were referred for trial by special courts-martial. Appellant now contends as he did at trial that his case was referred for trial by general court-martial because of his race and, therefore, that he has been denied equal protection of the law in violation of the Fifth and Fourteenth Amendments to the Constitution.

The evidence advanced by appellant at trial and on appeal in support of his allegation of unlawful selective prosecution consists solely of a resume of the charges against him and the five other accused whose cases were investigated with his and a comparison of the ultimate disposition of the charges against the six accused. From that resume of charges and their ultimate disposition the appellant alleged in a letter of 25 September 1981 to the convening authority (Defense Exhibit C) and subsequently alleged at trial and on this appeal:

"It is my understanding that your command has, following the Article 32 Investigations, recommended or held general courts-martial in the cases of all three of the Blacks, while allowing the three whites to go before special courts-martial or less. I feel that, while apparently not at all purposeful discrimmination (sic) be (sic) either yourself or members of your command, the above cited results effec-

tively discrimminate (sic) against myself as a Black."

Similarly, in argument before the military judge on a motion to dismiss due to selective prosecution the trial defense counsel stated:

"I think that the facts together with the concerns of the command [for equal treatment] * * * certainly raise the specter that there may not have been any purposeful or any sort of discrimination that was overt on the part of anyone in the chain of command, the Admiral included, but I think somewhere along the line the case has fallen through the cracks and someone up in the chain of command somewheres failed to look at the big picture, and to consider the fact of—the fact of race. * * * I feel that * * * the information [presented] * * * has raised a very good possibility of purposeful or somewhat latent discrimination on the basis of race in this case." (R– 116).

To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that he has been singled out for prosecution while others similarly situated have not generally been proceeded against because of similar conduct, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon impermissible considerations such as race, religion or the desire to exercise constitutional rights. *U.S. v. Berrios,* 501 F.2d 1207 (C.A.N.Y.1974); *U.S. v. Steele,* 461 F.2d 1148 (C.A.9 1972); *U.S. v. Nelson,* 486 F.Supp. 464 (D.C.Mich.1980); *U.S. v. Eklund,* 551 F.Supp. 964 (D.C.Iowa 1982); *U.S. v. Wayte,* 710 F.2d 1385 (C.A.9 1983). Cf. *U.S. v. Falk,* 479 F.2d 616 (C.A.7 1973); *U.S. v. Schmucker,* 721 F.2d 1046 (CA6 11– 25–83).

The conscious exercise of some selectivity in enforcement of the law is not in itself a federal constitutional violation. There is a strong presumption that a prosecution for violation of the law is undertaken in good faith and the burden of presenting

sufficient facts to raise a reasonable doubt about the prosecution's purpose rests on the defendant. Even though the statistics might support an implication of selective enforcement, there must be a further showing that the selection was deliberately based upon an unjustifiable standard. *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *U.S. v. Gebhart,* 441 F.2d 1261 (C.A.6 1971), certiorari denied 404 U.S. 855, 92 S.Ct. 97, 30 L.Ed.2d 96; *U.S. v. Peskin,* 527 F.2d 71 (C.A.Ill.1975), certiorari denied 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79; *U.S. v. Nelson,* supra.

■ The mere fact that the appellant's case and those of the other black defendants were ultimately tried by general courts-martial while the cases of the white defendants involving similar offenses were resolved in lower forums, standing alone, does not support the claim of selective prosecution because of race. Nor have we found any other evidence supporting the appellant's claim of discrimination either in the record of trial or in the additional documents filed before us by appellate counsel. Indeed, the evidence indicates that the district legal officer who made the final recommendations respecting disposition of the appellant's case and the convening authority who referred the case for trial by general court-martial were not aware of the defendant's race. Additionally, the trial counsel's analysis of the various cases, his trial strategy explained in an affidavit enclosed as Exhibit 10 to a report of investigation of appellant's discrimination complaint filed by appellate defense counsel for our consideration and his conduct portrayed in the record of trial are all highly professional. The tactics he employed throughout the preparation and presentation of the cases at trial were clearly within the bounds of prosecutorial discretion, and none of the evidence brought to our attention even suggests that he or others acting on behalf of the government were motivated by impermissible considerations. The appellant's claim of selective prosecution due to his race is without merit.

The appellant was taken into custody on 30 March 1981. In addition to a quantity of marijuana, $576.30 currency was seized from him. Of this, $130.00 was marked currency delivered to appellant by a collaborator with Coast Guard investigators for a quantity of marijuana purchased just prior to appellant's apprehension. The marijuana and all of the seized currency were retained by government representatives as evidence. Appellant contends that by refusing to return the seized currency as requested the government effectively deprived him of his right to retain counsel to represent him during the investigation of charges against him and at any subsequent trial.

■ We find no impropriety in the government's seizure and retention of the currency as evidence at the appellant's trial. Additionally, the appellant concedes that the seized currency would have been insufficient to defray the stated fees of the desired attorney so that release of the currency would not have assured the appellant's representation by civilian counsel of his choice in any event. Thus, the assignment of error is without merit.

We have carefully considered the remaining assignments of error and find them to be without merit.

The findings of guilty and the sentence as approved on review below are affirmed.

Judges HOLLAND and BRIDGMAN concur.

Judges BURGESS and REINING did not participate in the decision in this case.